IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| FIRELIN J.,[1] | Case No. 6:21-cv-1534-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Mark A. Manning, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene OR 97401. Of Attorney for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Firelin J. brings this appeal challenging the decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and Supplemental Security Income (SSI) under Title XVI of the Act. The Commissioner denied Plaintiff's benefits at step five of the five-step sequential process to determine disability. After evaluating the decision of the Administrative Law Judge (ALJ), the Court reverses and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on January 12, 2019, and she applied for SSI on February 2, 2019. AR 95, 96. Plaintiff originally alleged a disability onset of December 31, 2005. AR 240. On October 14, 2020, Plaintiff filed a motion by letter to amend her alleged onset date to March 16, 2009. AR 250.[2] Thus, Plaintiff was 36 years old at the time of her amended alleged onset date. AR. 240. Before the amended alleged onset date Plaintiff worked at various part-time and temporary positions. AR 320. After the amended alleged onset date, Plaintiff has held various part-time and temporary positions and has been self-employed as a housecleaner and yard worker. *Id*. Plaintiff testified that her ability to work was limited by her "time-management, [and] stress management" skills and an "overall lack of . . . consistancy [sic]." AR 304. Plaintiff also testified that she "gets easily overstimulated and interactions can compromise [her] focus and patience." AR 309. She was laid off from past jobs because she was "always late or unable to go [to work] because of anxiety," or had "conflict[s] with co-workers." *Id*.

The Commissioner denied Plaintiff's claim initially and upon reconsideration. AR 131-40, 141-46. ALJ Mark Triplett heard Plaintiff's case via telephone hearing on December 18, 2020. AR 15. ALJ Triplett issued a decision dated December 29, 2020, concluding that Plaintiff was not disabled. AR 25. Plaintiff appealed, and the Appeals Council denied review on August 31, 2021, making ALJ Triplett's decision the final decision of the Commissioner. AR 1. Plaintiff appeals that decision to this Court.

---

[2] The ALJ's opinion refers to Plaintiff's original alleged onset date, not the amended onset date. At Plaintiff's hearing, however, the ALJ recognized Plaintiff's amended onset date. AR 32.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C.  The ALJ's Decision

As a preliminary matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status of the Act through September 30, 2014. AR 17. The ALJ then applied the five-step sequential process to determine whether Plaintiff was disabled. AR 17-24. At step one of the sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the original alleged onset date of December 31, 2005. AR 17-18. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: depressive disorder; unspecified neurodevelopment disorder; and trauma disorder. AR 18.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18-19. Because the ALJ found no impairment qualifying Plaintiff as disabled, the ALJ assessed Plaintiff's RFC before moving to step four of the sequential analysis. AR 19-23. The ALJ found that Plaintiff could perform a full range of work at all exertional levels but had nonexertional limitations:

> [Plaintiff] can perform simple, routine tasks that can be learned in 30 days or less. [Plaintiff] can tolerate occasional contact with coworkers, supervisors, and the general public. [Plaintiff] cannot engage in team-based work or work that requires close collaboration. [Plaintiff] can tolerate occasional changes to work routines or processes. [Plaintiff] cannot sustain detailed or complex work for an [eight] hour day.

AR 19.

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. AR 23. At step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the opinion of a vocational expert. The ALJ then determined Plaintiff could perform jobs existing in significant numbers in the national economy. AR 23-24. The ALJ therefore concluded

that Plaintiff was not disabled from her original alleged onset date through December 29, 2020, the date of the ALJ's decision. AR 24.

## DISCUSSION

Plaintiff argues that the ALJ erred in discounting her subjective symptom testimony, rejecting lay witness testimony, and finding unpersuasive the medical testimony of Plaintiff's treating provider and an agency-referred consultive diagnostician. Each alleged error is addressed in turn.

## A.  Plaintiff's Subjective Symptom Testimony

### 1.  Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d 880, 883 (9th Cir. 2006).

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a

claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

### 2. The ALJ's Evaluation of Plaintiff's Testimony

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. AR 20. The ALJ, however, discounted the severity of Plaintiff's alleged symptoms because her "treatment records and activities of daily living document[ed] greater functionality." *Id*.

As a preliminary matter, Plaintiff argues that the ALJ did not sufficiently "identify the testimony that [he] found not credible" and did not sufficiently "link that testimony to the particular parts of the record supporting [his] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. The ALJ, however, did identify Plaintiff's testimony about her "difficulties with social functioning" as the symptom testimony that he found unsupported. AR 21. The ALJ then linked that testimony to several parts of the record that he identified as supporting his determination. *Id*. The ALJ identified parts of the record that suggested that Plaintiff had several houseguests, and attended physical therapy, several family gatherings, and the Oregon Country Fair. *Id*. Thus, because "the ALJ . . . stat[ed] specifically which symptom testimony . . . [he]

found] not credible and what facts in the record [led] to that conclusion," *Smolen*, 80 F.3d at 1284, this Court can properly "review whether the ALJ provided specific, clear, and convincing reasons for rejecting [Plaintiff's symptom] testimony," *Brown-Hunter*, 806 F.3d at 494.

The ALJ discounted Plaintiff's testimony about her limitations caused by her mental health symptoms because her daily living activities contradicted her claimed limitations and her testimony was not supported by the objective medical evidence.[4] The Court addresses each reason in turn.

### a. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a

---

[4] The Commissioner contends that the ALJ also asserted that Plaintiff's symptoms improved with treatment, but the Court does not read the ALJ's opinion as providing that as a reason to discount Plaintiff's subjective testimony. The ALJ mentions "stable" mood in describing how the objective medical records do not support Plaintiff's claimed limitations and her "improved" mood in describing how she worked part-time. AR 20-21. The ALJ only mentioned improvement with treatment in reciting the opinions of the non-examining agency medical reviewing doctors, whose opinions the ALJ found "somewhat persuasive." AR 21-22. Even if this recitation could be construed as the ALJ adopting that rationale as his own analysis of Plaintiff's testimony, the Court does not find it to be clear and convincing. "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). A court must also consider "that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* "[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence . . . ." *Id.* Plaintiff's treatment records show that her symptoms waxed and waned in a cyclical manner throughout her treatment.

totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison*, 759 F.3d at 1017

The ALJ rejected Plaintiff's testimony in part because Plaintiff's "statements about the intensity, persistence, and limiting effects of . . . her symptoms . . . [were] inconsistent . . . [with her] activities of daily living . . . ." AR 20. Activities referenced by the ALJ included: living independently, managing her money, welcoming house guests, working intermittently, and attending two family reunions and the Oregon Country Fair. AR 20-21.

The ALJ mischaracterized several of these activities. For example, although Plaintiff does live independently, her home is owned by her mother and stepfather. AR 644. Her mother also helps her with household activities. AR 41. The ALJ's assertion that Plaintiff manages her own money is also belied by the record. Plaintiff's stepfather testified that Plaintiff "has a savings account, but often will need help figuring out statements, balances, etc." AR 299. He

also testified that Plaintiff "forget[s] to pay [her] bills on time." *Id.* Plaintiff's mother provided

similar testimony, stating that Plaintiff allows "mail [to] pile[] up, so bills, statements etc. are

forgotten." AR 315. Plaintiff lives alone, and thus she "lives independently," but she maintains

her *independence* through the continued support of her parents. Plaintiff's attempts to maintain

some independence despite the symptoms of her mental illness do not undermine her testimony

about the severity of her overall disability. *See Vertigan*, 260 F.3d at 1050.

The ALJ also mischaracterized Plaintiff's relationship with her houseguests. The ALJ

asserted that Plaintiff's "reported difficulties with social functions" are belied by the fact that she

"welcomed" houseguests to live with her. AR 21. In fact, Plaintiff's houseguests show the effect

her impairment has on her social functioning and boundary setting. The ALJ referenced two

houseguests. The first was Plaintiff's friend. This friend, however, stayed at Plaintiff's house rent

free, and often wore Plaintiff's clothing and used Plaintiff's toiletries without permission.

AR 459. Plaintiff felt used, which Plaintiff's treating provider Kenneth Zimmerman, PMHNP,

noted "represent[ed] a familiar pattern of the manner in which [Plaintiff] has engaged in

relationships historically." AR 460. To help set a boundary, Plaintiff "consider[ed] sharing with

[her friend] that she [was] engaged in therapy and that her assertive skills [were] one issue that

[she was] focusing on." *Id.* The second houseguest referenced by the ALJ was Plaintiff's

boyfriend at the time. Mr. Zimmerman noted that he verbally abused Plaintiff and engaged in

physically threatening behavior. AR 464. Mr. Zimmerman also observed that "engaging in

relationships with people who are exploitive and disrespectful to [Plaintiff's] feelings [was] her

pattern." AR 465. The treatment records establish that Plaintiff attended counseling in part to

strengthen her ability to develop healthy reciprocal relationships. Plaintiff allowed these guests

into her home in part *because* of her impairments, not despite them. Further, that Plaintiff has

problems with social functioning, the only testimony identified by the ALJ, does not mean that Plaintiff cannot attempt to have any close relationships in her life, such as a friend or a boyfriend. *Cf. Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). The ALJ erred in citing these guests as evidence that Plaintiff's symptom testimony conflicted with her apparent functionality.

Next, the ALJ noted that after Plaintiff's original alleged onset date she held various "odd jobs" and attended two family reunions and the Oregon Country Fair.[5] The ALJ cited these facts as evidence that Plaintiff's symptom testimony conflicted with the record. AR 21. The jobs the ALJ cited included catering, gardening, and housekeeping. AR 21. Plaintiff attended the first family reunion in September 2015, the Oregon Country Fair in July 2019, and the second family reunion in November 2019. AR 510, 451, 673.

Plaintiff's occasional social outings and her history of odd jobs "must . . . be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison*, 759 F.3d at 1017. The ALJ, however, gave no consideration as to whether these glimpses of functionality merely represented "the unpredictable course of mental illness, [in which] symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Id.* at 1017 n.22 (bracket omitted). "[I]ndividuals with chronic psychotic disorders commonly have their lives structured in such a

---

[5] The Court best understands the ALJ's references to Plaintiff's work history with respect to Plaintiff's daily living activity; the Court therefore considers Plaintiff's work history here.

way as to minimize stress and reduce their signs and symptoms." *Id*. The ALJ erred by not

considering the nature of Plaintiff's mental illnesses when interpreting her daily living activities.

Such a consideration proves relevant here. For example, during the 2015 family reunion,

Plaintiff stayed in an individual cabin, limiting her social interactions, and providing her with

time to decompress. AR 510. At the Oregon Country Fair, Plaintiff chose to stay in her own tent

with the intention of "allow[ing] [herself] alone time when she need[ed] it." AR 661. Plaintiff's

parents also attended the Oregon Country Fair, where they helped Plaintiff deal with the large

number of people present by walking with her. AR 51. Plaintiff was self-employed as a gardener

and housekeeper, where she only worked between five and 15 hours per week. AR 43.

Consistent with her testimony, self-employment limited her interactions with others, and allowed

her ample time to decompress. Considered within the context of Plaintiff's mental illness, and

without more specific information about what these activities entailed, it cannot be said that

these activities provided a clear and convincing reason supported by substantial evidence to

disregard Plaintiff's testimony.

### b. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as only a

"relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v.

Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the

claimant's testimony as to subjective symptoms merely because they are unsupported by

objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v.

Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R.

§§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements

about the intensity and persistence of your pain or other symptoms or about the effect your

symptoms have on your ability to work solely because the available objective medical evidence

does not substantiate your statements"). Here, even if the objective medical evidence does not support Plaintiff's claimed limitations, that alone cannot provide a clear and convincing reason to discount her testimony.

## B.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.").

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here

lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's mother, Georgene P., and stepfather, James O., both completed a Third-Party function report on behalf of Plaintiff's DIB and SSI claims. AR 312-319, 296-303. The ALJ stated that he "considered" the lay witness statements, but he did "not . . . evaluat[e] [them] for persuasiveness" because they were not "opinions" under current social security rules and regulations. AR 23. The Commissioner argues that this was not an error because the revised regulations describing how to evaluate medical opinion testimony do not explicitly require ALJs to articulate how they considered nonmedical source statements. *See* 20 C.F.R. §§ 404.1520c(d); 416.920c(d). The Court has repeatedly found this argument unpersuasive. *See, e.g.*, *John H. v. Kijakazi*, 2022 WL 8035418, at *8 (D. Or. Oct. 14, 2022). The Court finds it unpersuasive here for the same reasons.

The Commissioner also argues that any error the ALJ committed in failing to address the lay witnesses' submissions was harmless because the lay testimonies identified no limitation not already accounted for in Plaintiff's symptom testimony. Thus, argues the Commissioner, the Court can discount the lay testimony for the same reasons the ALJ rejected Plaintiff's testimony. Because the Court rejected the ALJ's reasons for discounting Plaintiff's testimony, those reasons do not provide a basis to discount the lay testimony. Thus, the ALJ committed harmful error.

**C.  Medical Evidence**

Plaintiff applied for DIB on January 14, 2019, and for SSI on April 19, 2019. For claims filed on or after March 27, 2017, Federal Regulations 20 C.F.R. §§ 404.1520c and 416.920c govern how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods*, 32 F. 4th at 792 ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416.920c(c)(3). An ALJ, however, is not required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-

supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

The ALJ found the medical opinions of Dr. Pamela Roman and Mr. Zimmerman unpersuasive. The Court considers each opinion in turn.

### 1. Dr. Roman

Plaintiff was referred to Dr. Roman for a psychodiagnostic assessment by the Oregon Department of Human Services. AR 643. As a part of the assessment Dr. Roman reviewed the Third-Party Function report completed by Plaintiff's stepfather, clinically interviewed Plaintiff, and administered three psychometric tests. *Id.* In her September 2019 opinion, Dr. Roman determined that Plaintiff "would be expected to have difficulty maintaining attention and concentration throughout a normal workweek and workday in a reliable and consistent manner." AR 647. The ALJ found Dr. Roman's opinion unpersuasive for four reasons.

The ALJ first asserted that Dr. Roman did not identify which of the tests she administered supported her opinion. AR 22. Dr. Roman did, however, identify what objective medical

evidence she relied on in forming her opinion. Immediately preceding Dr. Roman's assessment

of Plaintiff's concentration and attention, Dr. Roman noted that, given a list of three unrelated

items, Plaintiff could only remember one after three minutes. AR 647. Dr. Roman cited this

relevant objective medical evidence in support of her opinion about Plaintiff's concentration and

attention. *See* 20 C.F.R. § 404.1520c(c)(1) (defining supportability). Dr. Roman also explained

that her opinion was based on Plaintiff's "presentation [during the assessment] and [Plaintiff's]

description of her history," or, in other words, Dr. Roman's objective clinical interview with

Plaintiff and Plaintiff's subjective reports. AR 647. Dr. Roman identified a clinical interview and

a mental status evaluation in support of her opinion. *See Buck v. Berryhill*, 869 F.3d 1040, 1049

(9th Cir. 2017) (noting that clinical interviews and mental status evaluations "are objective

measures"). Thus, the ALJ's assertion that Dr. Roman did not identify which of the tests she

administered supported her opinion is not supported by substantial evidence.

The ALJ next asserted that Dr. Roman relied too heavily on Plaintiff's subjective

statements, which "[were] out of proportion to the observations of her treating providers."

AR 22. The Court first notes that

> [p]sychiatric evaluations may appear subjective, especially
> compared to evaluation in other medical fields. Diagnoses will
> always depend in part on the patient's self-report, as well as on the
> clinician's observations of the patient. But such is the nature of
> psychiatry. Thus, the rule allowing an ALJ to reject opinions based
> on self-reports does not apply in the same manner to opinions
> regarding mental illness.

*Buck*, 869 F.3d at 1049 (citation omitted). Dr. Roman's partial reliance on Plaintiff's self-

report—along with Dr. Roman's clinical interview, and the mental status evaluation—was

acceptable. And the Court has already found that the ALJ erred in discounting Plaintiff's

symptom testimony. Nor did the ALJ explain how Plaintiff's claimed limitations were "out of

proportion" to the observations of her treating providers, which show that Plaintiff's symptoms

waxed and waned. Therefore, this explanation for finding Dr. Roman's opinion unpersuasive also is not supported by substantial evidence.

The ALJ provides two more reasons for finding Dr. Roman's opinion unpersuasive. First, the ALJ asserts that Dr. Roman did not consider the nature of work that would pose Plaintiff difficulty. Second, the ALJ asserts the Dr. Roman only minimally referenced Plaintiff's alcohol use. The Commissioner does not expressly concede that these explanations are not supported by substantial evidence. The Commissioner, however, does not defend these reasons or respond to Plaintiff's arguments challenging these reasons. Accordingly, the Commissioner has waived any argument that these reasons for finding Dr. Roman's opinion unpersuasive are supported by substantial evidence. *See, e.g.*, *Megan S. v. Berryhill*, 2019 WL 1919169, at *5 (D. Or. Apr. 30, 2019) (finding that the Commissioner "has waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement" by failing to respond to Plaintiff's arguments other than generally to assert "harmless error"); *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally sufficient); *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues).

The ALJ's rejection of Dr. Roman's opinion was harmful error because the limitations Dr. Roman included in her opinion were greater than those the ALJ incorporated into Plaintiff's RFC. Dr. Roman found that Plaintiff would be unable to maintain attention and concentration throughout the workday and workweek. AR 647. The ALJ did not include these limitations in Plaintiff's RFC. Thus, the ALJ committed harmful error by discounting Dr. Roman's opinion.

PAGE 21 – OPINION AND ORDER

*See Heather P. v. Kijakazi*, 2022 WL 1538654, at *7 (D. Or. May 16, 2022) (concluding that the ALJ's rejection of a medical opinion was harmful because the limitations in that opinion were greater than those the ALJ incorporated into the RFC).

### 2. Mr. Zimmerman

Beginning March 16, 2009, Plaintiff has intermittently sought counseling from Mr. Zimmerman. AR 808. Mr. Zimmerman submitted responses about Plaintiff's impairment in the form of a questionnaire. AR 808-13. Mr. Zimmerman found that Plaintiff had marked limitation in her ability to understand and remember simple and complex instructions and in her ability to make judgments on complex work-related decisions. AR 811-12. Mr. Zimmerman found extreme limitation in Plaintiff's ability to carry out complex instructions. AR 812. Mr. Zimmerman also found that Plaintiff would miss four or more days of work per month. AR 813.

The first two reasons the ALJ provided for finding Mr. Zimmerman's opinion unpersuasive were that Mr. Zimmerman failed to discuss Plaintiff's alcohol use, and that he did not offer an opinion about when Plaintiff's limitation began. The Commissioner does not expressly concede that these reasons are not supported by substantial evidence. The Commissioner, however, does not defend these reasons or respond to Plaintiff's arguments challenging these reasons. Thus, as discussed above, the Commissioner has waived any argument that these reasons for finding Mr. Zimmerman's opinion unpersuasive are supported by substantial evidence.

The final reason the ALJ gave for finding Mr. Zimmerman's opinion unpersuasive was that it was not supported by Plaintiff's treatment records. The ALJ noted that Mr. Zimmerman "[found] . . . [Plaintiff had] marked limitation in understanding and remembering simple instructions, but … [this was inconsistent with Plaintiff's ability] to live independently, use

public transportation, ride a bicycle, and participate in physical therapy." AR 22. Plaintiff's general abilities to live alone, take public transportation, ride a bicycle, and participate in physical therapy are not inherently inconsistent with a marked limitation in understanding and remembering simple instructions. These activities require limited ability to understand or follow simple instructions. They also can be learned with the support of family and friends (or a physical therapist) over the course of an extended period of time and most of them become instinctive and require no further ability to understand or remember instructions. That is to say, once learned, these activities are just like riding a bike. Accordingly, the ALJ's proffered reason to discount Mr. Zimmerman's medical opinion is not supported by substantial evidence.

The ALJ's rejection of Mr. Zimmerman's opinion was harmful error because the limitations Mr. Zimmerman included in his opinion are greater than those the ALJ incorporated into Plaintiff's RFC. Mr. Zimmerman found that Plaintiff would miss more than four days of work per month. AR 813. The ALJ did not include this limitation in Plaintiff's RFC. Thus, the ALJ committed harmful error by discounting Mr. Zimmerman's opinion. *See Heather P.*, 2022 WL 1538654, at *7.

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a

claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether it is fully developed, free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, there are outstanding conflicts and ambiguities, including between the differing medical opinions and between Plaintiff's testimony and the agency medical opinions. There are conflicts regarding what portion of the workday Plaintiff could maintain attention and concentration, and how many workdays per month Plaintiff's impairment would cause her to be late to, or absent from, work. Thus, the Court remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 10th day of February, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge